**AGREED-UPON REDACTED COPY**
**MAY BE MADE PUBLIC**

**PROTECTED INFORMATION**
**TO BE DISCLOSED ONLY IN ACCORDANCE WITH**
**U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

| | | |
|---|---|---|
| FOREST CITY MILITARY COMMUNITIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07-546C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S CROSS-MOTION FOR
JUDGMENT UPON THE ADMINISTRATIVE RECORD, AND OPPOSITION TO
PLAINTIFF'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

TIMOTHY P. MCILMAIL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 616-0342
Facsimile: (202) 514-7965

OF COUNSEL:
MATTHEW R. KEISER
Assistant Counsel for Procurement
U.S. Army Corps of Engineers
Washington, DC 20314-1000

August 7, 2007

Attorneys for Defendant

TABLE OF CONTENTS

PAGE(S)

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . 1

QUESTION INVOLVED. . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . 2

I. Nature Of The Case. . . . . . . . . . . . . . . . . . . . . . 2

II. Statement And Counter-Statement Of Facts. . . . . . . . . . . 2

A. Background. . . . . . . . . . . . . . . . . . . . . . . . 2

B. Price And Scope Guarantee And Vertical Costs. . . . . . 3

C. GMH's Proposal To Begin Renovation Of Some Units In Year [redacted] Of The Project. . . . . . . . . . . . . . . 5

D. The Army's Use Of A "Plug" Number To Estimate GMH's New Construction Vertical Costs. . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I. Standard Of Review. . . . . . . . . . . . . . . . . . . . . . 7

II. The Court Should Grant Judgment In Favor Of The Government And Deny Forest City's Request For Relief Because Forest City Can Not Succeed On The Merits. . . . 10

A. The Court Should Reject Forest City's Argument That The Army Failed To Consider Its "[redacted] Scope Guarantee" Because The Army Assessed The Value Of That Guarantee. . . . . . . . . . . . . . . . . . . . 10

B. The Court Should Reject Forest City's Argument That The Army Improperly Assessed GMH's Proposal To Begin Renovation And New Construction Of Some Housing Units In The [redacted] Year After Conveyance, Because The RFQ Did Not Preclude That Proposal. . . . . . . . . . 13

C. The Court Should Reject Forest City's Argument That The Army Improperly Used A "Plug" Number To Calculate GMH's Vertical Costs Of New Construction Because Forest City Fails To Demonstrate Any Prejudice From That Approach.. . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF FILING

## TABLE OF AUTHORITIES

### FEDERAL CASES


Baltimore Gas & Electric Co. v. Natural Resource Defense Council, Inc., 462 U.S. 87 (1983). . . . . . . . . . . . . . . . . . . . . . . . . 8

Banknote Corp. of America, Inc. v. United States, 56 Fed. Cl. 377 (2003), aff'd, 365 F.3d 1345 (Fed. Cir. 2004) . . . . . . . . . . . . . . 8

Bannum, Inc. v. United States, 404 F.3d 1346 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . 8

C.A.C.I., Inc.-Federal v. United States, 719 F.2d 1567 (Fed. Cir. 1983). . . . . . . . . . . . . . . . . . . 7

E.W. Bliss Co. v. United States, 77 F.3d 445 (Fed. Cir. 1996)). . . . . . . . . . . . . . . . . . . 8

Galen Medical Assocs., Inc. v. United States, 369 F.3d 1324 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . 8, 9

Griffy's Landscape Maintenance LLC v. United States, 46 Fed. Cl. 257 (2000). . . . . . . . . . . . . . . . . . . . . . . 9

Information Technology and Applications Corp. v. United States, 51 Fed. Cl. 340 (2001), aff'd, 316 F.3d 1312 (Fed. Cir. 2003). . . . . . . . . . . . . . . 8

ManTech Telecommunication and Information Systems Corp. v. United States, 49 Fed. Cl. 57 (2001). . . . . . . . . . . . . . 9

PGBA, LLC v. United States, 389 F.3d 1219 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . 7

T & S Products, Inc. v. United States, 48 Fed. Cl. 100 (2000). . . . . . . . . . . . . . . . . . . . 8, 13, 15


### REGULATIONS


FAR § 15.306(d). . . . . . . . . . . . . . . . . . . . . . . . . . . 1


### RULES


Rule 52.1(b) of the Rules of the United States Court of Federal Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

| | | |
|---|---|---|
| FOREST CITY MILITARY COMMUNITIES, LLC, | ) | |
| Plaintiff, | ) | No. 07-546C |
| v. | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S CROSS-MOTION FOR
JUDGMENT UPON THE ADMINISTRATIVE RECORD, AND OPPOSITION TO
PLAINTIFF'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

## INTRODUCTION

Pursuant to Rule 52.1(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, requests that the Court deny the motion for judgment upon the administrative record filed by plaintiff, Forest City Military Communities, LLC ("Forest City")[1], and grant judgment upon the administrative record in favor of the Government.

## QUESTION INVOLVED

Whether the Court should enjoin further performance of a contract awarded to craft a community development management plan for the construction, renovation, and maintenance of family housing at the United States Military Academy over a 50-year period, where the protester's proposed cost of new construction

[1] Pursuant to the approach adopted by the parties and the Court, we respond to Forest City's Memorandum In Support Of Motion For Preliminary Injunction as though it were a motion for judgment upon the administrative record pursuant to RCFC 52.1.

was [redacted] percent less[2] than the Army's estimate, where the solicitation did not prohibit the awardee from proposing not to renovate some housing units until the [redacted] year of the period, and where the protester does not show that the Army's use of a "plug" number to estimate the awardee's new construction cost per square foot prejudiced the protester.

## STATEMENT OF THE CASE

### I. Nature Of The Case

In this post-award bid protest action, Forest City challenges the Army's decision to award a $350,000 community development management planning contract to GMH/Centex Military Communities, LLC ("GMH").

### II. Statement And Counter-Statement Of Facts

#### A. Background

The Department of the Army issued a Request For Qualifications ("RFQ") to identify the most highly qualified offeror to enter into long-term business relationships with the Army to improve family housing at three sites, including the United States Military Academy ("USMA"), West Point, New York, pursuant to the Residential Communities Initiative ("RCI"). Tab 23, A288 ¶¶ 1.0(a)-(b), A289 ¶¶ 1.1(b), (e)(2).[3] The RFQ set

---

[2] Bolding denotes protected material.

[3] "Tab ___, A___" denotes a page of the administrative record filed in this case. Administrative record page numbers appear in (continued...)

forth two phases: in Phase 1, a $350,000 contract would be awarded to work with the Army to craft a Community Development and Management Plan ("CDMP"); in Phase 2, upon approval, the developer would implement the CDMP. Tab 23, A291 ¶¶ (j)(1)-(2); A299 ¶ 2.1.4(a). The awardee of the contract to work with the Army to craft the CDMP, however, would not necessarily become the developer that would implement the CDMP. Tab 23, A299 ¶ 2.1.4(a).

This protest involves the award of the contract to craft the CDMP. Complaint ("Compl.") at 11 ¶ 27. GMH and Forest City were among the Phase 1 offerors for the West Point project. Tab 38, A596; Tab 49, A704. The Army's Source Selection Authority ("SSA"), adopting the reasoning of a Source Selection Advisory Council ("SSAC"), determined that GMH offered the best value to the Government. Tab 76, A1491, A1498. The Army awarded the West Point Phase 1 contract to GMH. Tab 77, A1499.

B. Price And Scope Guarantee And Vertical Costs

The RFQ provided that "Step Two" of the solicitation process would include evaluating the offeror upon its "project finance." Tab 23, A314 ¶ 4.4(d). The RFQ stated that among the questions that would aid the evaluation team in evaluating the financial factor was "[t]o what degree is the offeror guaranteeing scope

---

[3] (...continued)
the bottom right-hand corner of administrative record pages. Cited pages are electronically appended to this document.

and price?" Tab 9, A138 ¶ (c) (emphasis in original); Tab 23, A327. Forest City proposed "a multifaceted approach to ensure pricing and scope completion for the RCI Project," including that "[redacted]" Tab 26, A526.

In addition, although Forest City proposed a "Total Guaranteed Maximum Price Contract Value" of [redacted] (Tab 26, A528), it explained that it proposed

> [redacted].

Tab 25, A476.

The SSAC found that "[redacted]" Tab 50, A1039. Although the consensus of the Source Selection Evaluation Board ("SSEB") and the consensus of the SSAC were recorded on forms that did not include the question regarding scope and price guarantee (Tab 50, A1039; Tab 52, A1066), four of the five evaluators specifically mentioned Forest City's guarantee. Tab 57, A1186; Tab 58, A1210; Tab 61, A1278; Tab 62, A1306. Only

one evaluator, who used a form that did not recite the guarantee question, did not mention Forest City's guarantee. Tab 56, A1164.

GMH's proposal included a guaranteed maximum price contract totaling [redacted] covering items such as demolition and new construction. Tab 91, A1900. The SSA stated that "GMH provides a Guaranteed Maximum Price contract for the projects" (Tab 76, A1496) and determined that "GMH . . . presented a cost structure that most closely represented the Army's benchmark and offered a Guaranteed Maximum Price which provided great confidence in the viability of the proposal." Tab 76, A1492.

Forest City proposed to construct [redacted] new units at [redacted] per square foot for vertical costs. Tab 26, A507, A525. The Army estimated that such construction would cost [redacted] per square foot. Tab 90, A1894. The SSA regarded Forest City's proposed cost as very low compared to the Army's estimate and, for that reason, viewed Forest City's proposed cost as creating "significant concern" (Tab 76, A1492), including because Forest City "did not sufficiently demonstrate that this cost could actually be achieved" (Tab 74, A1481). In addition, the SSAC found that "[v]alue would have been added if [Forest City] more clearly demonstrated through specific example their ability to achieve this price in a manner that would maintain the architectural integrity of West Point." Tab 50, A1034.

C. GMH's Proposal To Begin Renovation Of Some Units In Year [redacted] Of The Project

The RFQ provides that, in exchange for a 50-year conveyance of an inventory of a particular amount of family housing units, "the partner will provide for the new construction/renovation, operation, management and maintenance of the existing family housing inventory." Tab 9, A147. GMH proposed to begin renovating [redacted] units beginning in the [redacted] year after conveyance of the units. Tab 49, A735. Although GMH provided a table that stated "No Immediate Work Required" with respect to [redacted] units, that table refers to work such a new construction, replacement, and demolition. Tab 49, A755. GMH's proposal includes a maintenance program that does not exclude those [redacted] units from its coverage. Tab 49, A745-52.

The Army rated GMH "[redacted]" in Financial, Preliminary Concept, and Overall. Tab 74, A1477. The SSA specifically referenced GMH's proposal to "no work" [redacted] units. Tab 76, A1496.

D. The Army's Use Of A "Plug" Number To Estimate GMH's New Construction Vertical Costs

The SSA determined that "GMH also presented a cost structure that most closely represented the Army's benchmark." Tab 76, A1492. The Army arrived at that conclusion by "plugging in" to GMH's proposal the Army's [redacted]-square foot estimate of the weighted average square footage for the Army benchmark distribution of new units, finding that it could not locate that

number from GMH's proposal. See Tab 90, A1894. The Army determined that, whereas its own estimate of the cost of vertical construction was [redacted] per square foot, the estimate for GMH, using the plug number, was [redacted] per square foot. Tab 90, A1894. By contrast, Forest City estimated its vertical construction costs at [redacted] per square foot. Tab 26, A525.

GMH's cost of new construction is approximately [redacted] per square foot. See Tab 49, A718, A721, A724, A735, A946. GMH proposed to construct [redacted] three- and four-bedroom new housing units (Tab 49, A735, A946) totaling [redacted] total square feet (see Tab 49, A718, A721, A724) at a total cost of [redacted] (Tab 91, A1900).

ARGUMENT

I. Standard Of Review

The Court should grant judgment in favor of the Government, and deny Forest City's request for declaratory and injunctive relief, because Forest City does not meet the requirements for such relief. Injunctive relief is awardable only in extremely limited circumstances. C.A.C.I., Inc.-Federal v. United States, 719 F.2d 1567, 1581 (Fed. Cir. 1983). In deciding whether a permanent injunction should issue, a court considers:

(1) whether, as it must, the protester has succeeded on the merits of the case; (2) whether the protester will suffer irreparable harm if the court withholds injunctive relief;

(3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. See PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004).

A bid award may be set aside only if either the procurement official's decision lacked a rational basis or the procurement procedure involved a violation of regulation or procedure. See Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1329 (Fed. Cir. 2004). The protestor must meet that burden by a preponderance of the evidence. Info. Techn. and Applications Corp. v. United States, 51 Fed. Cl. 340, 346 (2001), aff'd, 316 F.3d 1312 (Fed. Cir. 2003). The standard of review of a bid protest recognizes the possibility that there exists a zone of acceptable results in a particular case and requires only that the final decision reached by an agency be the result of a process which "consider[s] the relevant factors" and is "within the bounds of reasoned decisionmaking." Banknote Corp. of America, Inc. v. United States, 56 Fed. Cl. 377, 380 (2003) (quoting Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 105 (1983)), aff'd, 365 F.3d 1345 (Fed. Cir. 2004).

The protester must also prove that any errors in the procurement process significantly prejudiced it. Bannum, Inc. v. United States, 404 F.3d 1346, 1353 (Fed. Cir. 2005).

Furthermore, rating decisions are the minutiae of the procurement process which involve discretionary determinations of procurement officials that should not be second guessed. See T & S Prods., Inc. v. United States, 48 Fed. Cl. 100, 104 (2000) (quoting E.W. Bliss Co. v. United States, 77 F.3d 445 (Fed. Cir. 1996)).

Where the bid protest at issue involves a "negotiated procurement," the protestor's burden of proving that the award was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law is greater than in other types of bid protests. Galen Medical, 369 F.3d at 1330. The higher burden exists because the contracting officer engages in what is inherently a judgmental process. Id. The greater the discretion granted to a contracting officer, the more difficult it will be to prove the decision was arbitrary and capricious. Id.

In a negotiated procurement, the contracting officer is entrusted with a relatively high degree of discretion. Id. Thus, a protestor's burden is particularly great in negotiated procurements. ManTech Telecomms. and Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 64 (2001). A negotiated procurement is one in which exchanges between the Government and offerors are undertaken with the intent of allowing the offeror to revise its proposal. Griffy's Landscape Maint. LLC v. United States, 46 Fed. Cl. 257, 259 (2000) (citing FAR § 15.306(d)). The procurement at issue in this case is a negotiated procurement:

the RFQ provides that the evaluation process might, after the submission of proposals, include "[a]dditional communication with prospective offerors . . . may be conducted at the discretion of the Contracting Officer." Tab 23, A318 ¶ 4.5. Because this is a negotiated procurement, the burden upon Forest City in challenging the Army's award decision is particularly great.

## II. The Court Should Grant Judgment In Favor Of The Government And Deny Forest City's Request For Relief Because Forest City Can Not Succeed On The Merits

### A. The Court Should Reject Forest City's Argument That The Army Failed To Consider Its "[redacted] Scope Guarantee" Because The Army Assessed The Value Of That Guarantee

The Court should reject Forest City's argument that the Army failed to consider its "[redacted] scope guarantee" because the Army assessed the value of that guarantee. Forest City argues that the Army failed to consider what it characterizes as its "[redacted] scope guarantee." Compl. at 28, 40 ¶ 120; Memorandum In Support Of Motion For Preliminary Injunction ("Pl. Memo.") at 17. The RFQ stated that among the questions that would aid the evaluation team in evaluating the financial factor was "<u>[t]o what degree is the offeror guaranteeing scope and price?</u>" Tab 9, A138 ¶ (c) (emphasis in original); Tab 23, A327. Forest City proposed "a multifaceted approach to ensure pricing and scope completion for the RCI Project," including that "[redacted]

[redacted]" Tab 26, A526. Forest City, however, did not define its use of the term "phase."

Moreover, although Forest City proposed a "Total Guaranteed Maximum Price Contract Value" of [redacted] (Tab 26, A528), it explained that it proposed

> [redacted].

Tab 25, A476. That indicates that Forest City's "guarantee" was not, in fact, a guarantee of all the dollar figures in the proposal, [redacted].

Moreover, the comment of the SSAC (Tab 50, A1039) that "[redacted]," establishes that the Army considered Forest City's guarantee, even though the consensus of the SSEB and the consensus of the SSAC were recorded on forms that did not include the questions regarding scope and price guarantee. Tab 50, A1039; Tab 52, A1066. Indeed, four of the five evaluators specifically mentioned that guarantee (Tab 57, A1186; Tab 58, A1210; Tab 61, A1278; Tab 62, A1306); only one evaluator, who used a form that did not recite the guarantee

question, did not mention the guarantee. Tab 56, A1164. What the SSA made of that guarantee, however, is the type of discretionary rating determination that should not be second guessed. See T & S Prods., 48 Fed. Cl. at 104.

Forest City is also wrong that its "guarantee" eliminates the adverse effect upon its proposal of its relatively very low proposed cost of vertical construction. Forest City proposed to construct [redacted] new units at [redacted] per square foot for vertical construction. Tab 26, A507, A525. The Army estimated that such construction would cost [redacted] per square foot. Tab 90, A1894. The SSA regarded Forest City's proposed cost as very low compared to the Army's estimate and, for that reason, viewed Forest City's proposed cost as creating "significant concern" (Tab 76, A1492), because Forest City "did not sufficiently demonstrate that this cost could actually be achieved" (Tab 74, A1481). In addition, the SSAC found that "[v]alue would have been added if [Forest City] more clearly demonstrated through specific example their ability to achieve this price in a manner that would maintain the architectural integrity of West Point." Tab 50, A1034.

That assessment was reasonable: Forest City's proposed cost of new construction was approximately [redacted] percent lower than the Army's estimate; even if Forest City were guaranteeing that cost, it was reasonable for the Army, in deciding with whom to work to craft the CDMP, to regard such a dramatic difference, unsupported

by any concrete examples of past successful vertical construction at that cost, as a weakness.

Forest City argues that the Army improperly assessed the value of GMH's guarantee. Compl. at 33, 40 ¶ 120; Pl. Memo. at 21. The SSA determined that "GMH . . . presented a cost structure that most closely represented the Army's benchmark and offered a Guaranteed Maximum Price which provided great confidence in the viability of the proposal." Tab 76, A1492. In fact, GMH's proposal included a guaranteed maximum price contract totaling [redacted] covering items such as demolition and new construction. Tab 91, A1900. Although Forest City argues that the SSA misunderstood the scope of GMH's guarantee, the SSA did not state that GMH guaranteed its entire project price; it stated that "GMH provides a Guaranteed Maximum Price contract for the projects." Tab 76, A1496. And as with the SSA's assessment of the value of Forest City's guarantee, the assessment of GMH's guarantee is the type of discretionary rating determination that should not be second guessed. See T & S Prods., 48 Fed. Cl. at 104.

B. The Court Should Reject Forest City's Argument That The Army Improperly Assessed GMH's Proposal To Begin Renovation And New Construction Of Some Housing Units In The [redacted] Year After Conveyance, Because The RFQ Did Not Preclude That Proposal

The Court should reject Forest City's argument that the Army improperly assessed GMH's proposal to begin renovation and new

construction of some housing units in the [redacted] year after conveyance, because the RFQ did not preclude that proposal. Forest City argues that the Army should have rejected GMH's proposal (or amended the RFQ before accepting such a proposal) because GMH proposed not to do any renovation or new construction with respect to [redacted] of the 628 units during the first [redacted] years of the project, or that, at a minimum, the Army should not have, in view of that proposal, rated GMH "[redacted]" in Project Finance, Preliminary Project Concept Statement, or Overall. Compl. at 36-38, 40 ¶ 120; Pl. Memo. at 25-26. The Court should reject that argument, for four reasons.

First, Forest City fails to identify where the RFQ requires that new construction or renovation must occur with respect to every unit during the first [redacted] years of the project. The RFQ provides that, in exchange for a 50-year conveyance of family housing units, "the partner will provide for the new construction/renovation, operation, management and maintenance of the existing family housing inventory." Tab 9, A147. GMH proposed to begin renovating [redacted] units beginning in the [redacted] year after conveyance of the units. Tab 49, A735. Nothing that Forest City points to prohibits that approach.

Second, GMH did not propose that it would perform no work at all on those [redacted] units, even during the first [redacted] years of the project. Rather, it proposed that no replacement, demolition, or

renovation would occur with respect to those units during that period. Tab 49, A735. (Although GMH provided a table that stated "No Immediate Work Required" with respect to [redacted] units, that table refers to work such a new construction, replacement, and demolition. Tab 49, A755.) In fact, GMH's proposal includes a maintenance program that does not exclude those [redacted] units from its coverage, indicating that maintenance work would be performed even with respect to those units during the first [redacted] years (see Tab 49, A745-52), consistent with the scope of the project (Tab 9, A147).

Third, the Army's assessment of GMH's proposal not to perform new construction or renovation of [redacted] units during the first [redacted] years of the project is another type of discretionary rating determination that should not be second guessed. See T & S Prods., 48 Fed. Cl. at 104.

Fourth, Forest City is wrong that the SSA was unaware of this aspect of GMH's proposal: the SSA specifically referenced that aspect of GMH's proposal. Tab 76, A1496.

C. The Court Should Reject Forest City's Argument That The Army Improperly Used A "Plug" Number To Calculate GMH's Vertical Costs Of New Construction Because Forest City Fails To Demonstrate Any Prejudice From That Approach

The Court should reject Forest City's argument that the Army improperly used a "plug" number to calculate GMH's vertical costs of new construction because Forest City fails to demonstrate that it was prejudiced by that approach. Forest City argues that the

Army improperly used a "plug" number to calculate GMH's vertical costs per square foot for new construction. Compl. at 40 ¶ 119; Pl. Memo. at 26. Not being able to locate the weighted average per square foot in GMH's proposal "pro forma," the Army, through its consultant Jones Lang LaSalle Americas, Inc., "plugged" its own estimate of the weighted average square footage for all "new construction" units and calculated that GMH's vertical cost per square foot was [redacted], compared to the Army's own cost estimate of [redacted] per square foot and Forest City's [redacted] per square foot claim. Tab 90, A1894. Based upon those calculations, the SSA determined that "GMH also presented a cost structure that most closely represented the Army's benchmark." Tab 76, A1492.

Forest City fails to demonstrate any prejudice arising from this issue, even though it states, without citation to any page of GMH's proposal, that "GMH's proposal clearly sets forth the square footage for new construction." Pl. Memo. at 27. In order to prove prejudice as a result of this "plug" number issue, Forest City would have to demonstrate that Forest City's vertical cost structure more closely represented the Army's benchmark than did GMH's proposed vertical costs.

Using data from GMH's proposal instead of a "plug" number, however, GMH's cost of new construction is approximately [redacted] per square foot, much closer to the Army's [redacted] per square foot cost than is Forest City's [redacted] per square foot cost. GMH

proposed to construct [redacted] three- and four-bedroom new housing units (Tab 49, A735 (Sites F and H "End State" ([redacted] + [redacted] = [redacted])), A946), and provided its proposed square footage for those units (([redacted] square feet x [redacted] SNCO three-bedroom units) + ([redacted] square feet x [redacted] SNCO four-bedroom units) + ([redacted] square feet x [redacted] FGO three-bedroom units) + ([redacted] square feet x [redacted] FGO four-bedroom units) = [redacted] total square feet. Tab 49, A718, A721, A724, A946). The weighted average square footage for the GMH new construction is [redacted] square feet per unit ([redacted] total square feet/[redacted] units = [redacted] square feet per unit). GMH's total proposed new housing construction cost is [redacted] (Tab 91, A1900), or [redacted] per unit ([redacted] units = [redacted] per unit). GMH's weighted average per square foot vertical cost, therefore, is [redacted] ([redacted] per unit/ [redacted] square feet per unit = [redacted] per square foot).

That [redacted] per square foot, although not as close to the Army's [redacted] per square foot cost as is the [redacted] that resulted from the use of the plug number, is still much closer to the Army's per square foot cost than is Forest City's [redacted] per square foot cost. Indeed, using those calculations, GMH's proposed per square foot new construction cost is only approximately [redacted] percent lower that the Army's estimate,

compared to Forest City's [redacted] percent lower proposed per square foot new construction cost.

Consequently, Forest City fails to demonstrate any prejudice from the Army's use of a "plug" number to estimate GMH's per square foot cost of new construction. Because Forest City fails to demonstrate any prejudice, the Court should reject Forest City's challenge to the Army's use of a "plug" number to estimate GMH's vertical costs per square foot.

## CONCLUSION

For all of these reasons, the Court should deny Forest City's request for declaratory and injunctive relief and grant judgment upon the administrative record in favor of the United States.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Timothy P. McIlmail
TIMOTHY P. MCILMAIL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 616-0342
Facsimile: (202) 514-7965

MATTHEW R. KEISER
Assistant Counsel for Procurement
Attn CECC-C
U.S. Army Corps of Engineers
441 G Street, N.W.
Washington, DC 20314-1000

August 7, 2007 Attorneys for Defendant

Certificate of Filing

I hereby certify that on August 7, 2007, a copy of the foregoing Defendant's Cross-Motion For Judgment Upon The Administrative Record, And Opposition To Plaintiff's Motion For Judgment Upon The Administrative Record was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Timothy P. McIlmail